Filed 4/30/25  P. v. Carvajal CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E084177 |
| v. | (Super.Ct.No. FSB19000211) |
| ANDREA LUZ CARVAJAL, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Michael A. Smith, Judge.  Affirmed.

William Paul Melcher, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Andrea Luz Carvajal appeals from the judgment entered after a jury found her guilty of first degree murder (Pen. Code, § 187, subd. (a); unlabeled statutory citations refer to the Penal Code) and found true that she personally used a firearm in the

1

commission of that offense (§ 12022.53, subd. (b)), and the trial court sentenced her to 25 years to life for the murder count plus an additional 10 years for the firearm enhancement. We appointed counsel to represent Carvajal on appeal, and counsel filed an opening brief that raised no issues and requested an independent review of the record under *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738. We affirm.

BACKGROUND

In April 2024, the People filed a first amended information charging Carvajal with the murder of Flavio Camacho (§ 187, subd. (a)) and alleging that she personally used and discharged a firearm resulting in great bodily injury and death (§§ 12022.5, subd. (a), 12022.53, subds. (b)-(d)).

At trial, the People called several witnesses, including Camacho's wife (G.C.). G.C. testified that she and Camacho had known Carvajal and Carvajal's husband (B.C.) for several years. G.C. and Camacho went to Carvajal's home on the weekends, and Carvajal was the godmother of their daughter.

G.C. testified that in December 2018, Carvajal borrowed $10,000 from Camacho. Later that month, Carvajal borrowed another $5,000 from Camacho. The loan was recorded in a notebook that Camacho kept in his closet.

On January 10, 2019, Camacho loaned Carvajal another $5,000. Camacho later called B.C. and told him about the loan.

2

On January 11, 2019, Camacho returned home from work "late around 6:00 or 5:00" p.m. At about 7:00 p.m., Camacho's phone rang. G.C. saw that it was Carvajal calling and told Camacho not to answer it. Camacho answered the phone anyway, and after a brief exchange, he went outside. Camacho returned with Carvajal, and they sat at the counter separating the living room from the kitchen.

Carvajal put her purse on the counter, and G.C. overheard Camacho and Carvajal discuss money. G.C. heard Carvajal ask Camacho why he had told B.C. that she "was spending the money at gambling at the casino." Camacho responded that he only "asked him if [she was] gambling money at the casino." G.C. had been standing next to Camacho but then moved away, and "[a]ll of a sudden" she heard "boom, boom, boom." G.C. heard Camacho scream, and she thought the noise had come from kids using fireworks. G.C. ducked and put her hands over her ears.

G.C. saw Camacho and Carvajal "grabbing onto something," and Carvajal was grimacing. G.C. saw blood on "the hands" and "above." G.C. thought that they were struggling over a gun. She ran to her bedroom, grabbed the phone, and "got out of there." She called 911 and hid. G.C. told the 911 dispatcher and law enforcement that Carvajal had come to her house and shot Camacho with a gun.

The People called Sergeant Bruce Southworth as a witness. Southworth testified that a nearby surveillance recording was reviewed, and he obtained a description of a vehicle leaving the scene shortly after the incident and discovered that it was registered to B.C. Carvajal was detained the following morning, and law enforcement executed a

3

search warrant at her home. Law enforcement found a pair of shoes in the master bedroom with suspected bloodstains, a pair of black pants in the laundry room, and clothes in the washing machine. While searching the garage, law enforcement found two cell phones that belonged to Camacho, a bloodstained flashlight, a bank bag, and a dark pink purse containing a pair of rubber gloves, a .38-caliber revolver, and torn sheets of paper documenting Camacho's loans to Carvajal. Law enforcement also found two live rounds and four spent rounds in the gun's cylinder. A bloodstain was found on the bank bag, which had been stuffed with plastic bags.

The People played a recording of Carvajal's interview with law enforcement for the jury. Carvajal said that she had borrowed money from Camacho because "he ha[d] a lot [of] money," and she needed money for diesel for her family's trucking company. She said that after Camacho spoke to B.C. about the loan, she was "mad." Carvajal said that B.C. told her that they would pay back the loan, but they would not pay the interest. She went to talk to Camacho to tell him that she would not pay the interest, and she intended to scare him if he did not agree. She brought a gun and ammunition with her, and she loaded the gun when she arrived.

Carvajal said that if she had intended to kill Camacho, then she would have killed him at the gate to his property. She said that when they were at the counter, she grabbed her purse and backed up. She said that Camacho grabbed for the gun, and they struggled over it. Camacho's finger pulled the trigger two times. She said that she thought she

4

pulled the trigger the third time. They fell as they were fighting, and Carvajal fell on top of him. Carvajal confirmed that she shot Camacho when he was lying on his back.

After law enforcement told Carvajal that they had located the gun and flashlight in her garage, she said that she hit Camacho with the flashlight after she fired the third round. Southworth said, "Your plan was to kill [Camacho], kill [G.C.], and then rob them for their money." Carvajal responded, "Yeah." Carvajal agreed that she did not want Camacho alive and was worried that he would call the police if he lived.

The People called Chief Forensic Pathologist Brian Hutchins as a witness. Dr. Hutchins opined that the cause of Camacho's death "was [the] gunshot wound of the chest with blunt force trauma of the head" and that "either of those injuries alone" would have caused Camacho's death.

Carvajal testified in her defense. She described the loans, and she said that she went to Camacho's home to confront him about "bad-mouthing" her and to tell him that she would not pay the interest on the loans. Carvajal was afraid of how Camacho would react, and she admitted that she had a loaded gun in her purse when she entered his home.

Carvajal claimed that she and Camacho struggled over the gun after Camacho saw it in her purse, and Camacho accidentally pulled the trigger, firing it twice. A third shot was fired in the ensuing struggle, but Carvajal testified that she did not think that she fired the gun that time either. Carvajal testified that Camacho was still moving after being shot, so she repeatedly hit him in the head with the flashlight to defend herself.

5

The court instructed the jury on willful, deliberate, and premeditated murder and also on first degree felony murder, with a predicate felony of burglary. In closing argument, defense counsel argued that Carvajal did not intend to kill Camacho, did not intend to commit an assault (the predicate felony for the burglary) when she entered Camacho's home, and acted in self-defense or in the heat of passion.

In May 2024, the jury found Carvajal guilty of first degree murder and also found that she personally used and discharged a firearm causing death in the commission of the murder. The following month, the trial court sentenced Carvajal to 25 years to life in state prison plus a consecutive 10-year sentence for personal use of a firearm under section 12022.53, subdivision (b). (The court struck the greater enhancement under section 12022.53, subd. (d).) The court awarded Carvajal 1,981 days of custody credit.

DISCUSSION

Carvajal's appellate counsel filed a *Wende* brief identifying three potentially arguable issues: (1) whether the People failed to prove beyond a reasonable doubt that Carvajal did not act in self-defense or heat of passion; (2) whether there was sufficient evidence to support a finding of premeditation and deliberation; and (3) whether there was sufficient evidence to support Carvajal's conviction under a felony-murder theory. Counsel asked that we conduct an independent review of the record. We advised Carvajal that she had 30 days to file a personal supplemental brief, and we received no response.

6

We have independently reviewed the record and found no arguable error that would result in a disposition more favorable to Carvajal.  (*Wende*, *supra*, 25 Cal.3d at pp. 441-442.)  Accordingly, we affirm the judgment.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ_____

J.

We concur:

MILLER_____
        Acting P. J.

CODRINGTON_____
                J.